UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11966-RWZ

MICHAEL VENDITTO

v.

GLEN CUNNINGHAM

MEMORANDUM OF DECISION AND ORDER

July 27, 2018

ZOBEL, S.D.J.

In 2005, the parties, then longtime friends, formed a yoga business called Sadhana, LLC.  Plaintiff Michael Venditto, a Massachusetts resident, invested over $200,000 in the venture and managed its two properties, as well as the accounting and legal matters.  Defendant Glen Cunningham, a New Hampshire resident, was a yoga instructor responsible for day to day operations, employee oversight, and recordkeeping.  Although defendant claimed business was slow but improving, by 2016 the parties agreed to sell the business assets.  As part of the sale, plaintiff purportedly discovered that defendant had been using both Sadhana locations to generate income he neither reported to, nor shared with, the business.  In this lawsuit, plaintiff alleges fraud and various related claims to recover his investment.  Defendant moves to dismiss all claims.

1

**I.      Factual Background**

The facts are recited as alleged in plaintiff's complaint (Docket # 1-1), see Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 5 (1st Cir. 2011), augmented by "documents annexed to it or fairly incorporated into it, and matters susceptible to judicial notice." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir. 2005).[1]

With two others (Rolf and Mariam Gates), plaintiff and defendant registered Sadhana, LLC, with the Massachusetts Secretary of State's Office on March 1, 2005, initially naming only Mariam Gates as manager. Three months later, they filed an Amended and Restated Certificate of Organization designating plaintiff, defendant, Rolf Gates, and Mariam Gates as managers. Nonetheless, Rolf and Mariam Gates departed soon thereafter pursuant to a buy-out agreement dated October 1, 2005.

Because the managers executed no partnership agreement, operating agreement, or loan documents, the buy-out agreement ("Buy-out") drafted and signed by all parties offers the most fulsome available description of their respective roles and obligations.[2] The Buy-out arranged for the sale of the Gates's "membership shares back to [the] company," leaving plaintiff and defendant as the sole remaining members and owners. Docket # 11-3, at 2. The Buy-out and accompanying Promissory Note outlined a "debt reduction strategy" between Rolf and Mariam Gates and Sadhana, LLC, and contemplated payment to Venditto and Cunningham personally only in the event

---

[1] In this case, the complaint relies upon the same documents attached to defendant's declaration in support of his motion to dismiss, Docket # 11, which are thus also incorporated in the recitation of facts. See Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993).

[2] Although it is undisputed that there was no executed operating agreement, Compl. ¶12, Docket # 10 at 9, the Redemption Agreement makes reference to a Draft Operating Agreement dated April 12, 2005, not produced in this litigation. See Docket # 11-3, at 17.

that both were "no longer owners of Sadhana LLC before the [Gates debt] is paid back to the company in full."  Docket # 11-3, at 8.  As of the date of the Buy-out, plaintiff had invested $212,500 in the business and paid an additional $53,106.81 in out-of-pocket expenses.

Sadhana, LLC, ran its yoga operations out of two locations, both owned by plaintiff.  Plaintiff was "primarily responsible for property upkeep and management, corporate record keeping, partnership level accounting and legal matters of the business."  Compl. ¶ 30.  Defendant was responsible for day to day operations at both locations, including but not limited to "employee oversight, scheduling and managing yoga classes, arrangements for yoga teachers to teach classes, processing of payments, day to day recording (sic) keeping and general fiscal management."  Compl. ¶ 29.  Plaintiff "entrusted [defendant] with the entire responsibility of the Sadhana locations based upon Cunningham's representations that he had desire, knowledge, expertise, and that he would provide investment returns for the contributions [plaintiff] made."  Compl. ¶ 71.  The business made some "interest payments" to its investors, including plaintiff, with amounts contingent on income stream, but none issued after 2012.

At defendant's urging, plaintiff made additional loans to the business, some of which were used to pay defendant.  Plaintiff had "occasional[] questions about Cunningham's financial accounting," but accepted his representation that "business was slow but that it was getting better."  Compl. ¶ 34.  After several unsuccessful years, however, plaintiff suggested that the parties sell the business, and defendant agreed.  Sadhana, LLC, sold its business assets and customer database for $25,000 on August

15, 2016. The sale expressly excluded the corporate entity itself, and provided that "Seller will be able to continue to operate the Sadhana, LLC business." Docket # 11-5, at 4.

After sale proceeds were applied to existing short-term debt, there remained $22,330.12 in unpaid rent and amounts owed to yoga teachers, accountants, and lawyers. In long-term debt, there remained $283,500 owed to investors, including $195,000 to plaintiff and $3,500 to defendant. As evinced upon the 2005 exit of Rolf and Mariam Gates, the parties intended that "any funds loaned to the business were to be repaid by the remaining participants." Compl. ¶ 53. Around the time of the 2016 sale, plaintiff and defendant confirmed their intention to pay all remaining short-term debt, but defendant has since refused to do so. A post-sale audit revealed defendant's failure to distinguish between funds he earned personally and income attributable to Sadhana, and defendant admitted to removing cash from the business to pay himself for classes taught. He now works for the new owners out of the same locations in which he previously operated with plaintiff.

Plaintiff filed a complaint in his personal capacity in the Massachusetts Superior Court on September 6, 2017, claiming fraud, breach of fiduciary duty, breach of contract, promissory estoppel, conversion, unjust enrichment, an accounting, and seeking the imposition of a constructive trust. Based on diversity of citizenship, defendant removed the action to this court and moved to dismiss the complaint for failure to state a claim.

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. For purposes of a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 52–53 (1st Cir. 2013).

## III. Analysis

The gravamen of plaintiff's complaint, brought in his personal capacity rather than on behalf of Sadhana, LLC, is that he was fraudulently induced to invest in the business in exchange for defendant's knowing false promises of diligence and intent to repay. Defendant contends that plaintiff's claims are time-barred, and that plaintiff lacks standing to assert them. He further asserts that the complaint does not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and that it fails to allege various necessary elements.

### A. Statute of Limitations

Defendant argues that plaintiff's fraud claims are barred by the three-year statute of limitations because they accrued in 2012, when plaintiff stopped receiving interest payments from the business. Mass. Gen. Laws ch. 260, § 2A. In the light most favorable to plaintiff, however, notice of reduced income stream despite defendant's

best efforts, as plaintiff alleges he assumed in 2012, is not commensurate with notice of

defendant's self-interested <u>undermining</u> of that income stream, as plaintiff alleges he

discovered only upon the sale of the business in August 2016.  <u>See</u> <u>Fin. Resources</u>

<u>Network, Inc. v. Brown & Brown, Inc.</u>, 754 F. Supp. 2d 128, 159 (D. Mass. 2010) (claim

accrues when "plaintiffs know or reasonably should have known that they were injured

as a result of the defendant's conduct.").  Accordingly, plaintiff's claims are not time-

barred.

### B.      Breach of Contract (Count III)

Plaintiff contends that defendant breached an oral contract formed when

defendant offered to "use best efforts to build and run a successful business" (<u>id.</u> ¶ 77),

and plaintiff "accepted by his actions in loaning money, agreeing to be in the business

venture and continuing to fund."  Docket # 14, at 7.

"[I]t is essential to state with 'substantial certainty' the facts showing the

existence of the contract and the legal effect thereof."  <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d

186, 194 (1st Cir. 1996) (quoting <u>Pollock v. New England Tel. & Tel. Co.</u>, 194 N.E. 133,

136 (Mass. 1935)).

As in <u>Doyle</u>, the complaint here

> fails to state the nature of the alleged contract with any specificity. There is
> no presentation of the terms of a contract, its duration, or even when it was
> formed. Nor does the [complaint] explain what obligations were imposed on
> each of the parties by the alleged contract . . . Conclusory statements [of
> breach] are insufficient to satisfy the pleading requirements.

<u>Id.</u> at 195.  Even accepting plaintiff's allegations as true, as I must at this stage, they are

too indefinite to state a contract.  <u>See</u> <u>Armstrong v. Rohm & Haas Co.</u>, 349 F. Supp. 2d

71, 81 (D. Mass. 2004) (allowing 12(b)(6) motion where "the alleged oral contract here

is too imprecise to be enforceable as a matter of law."). The motion to dismiss is allowed as to Count III.

### C. Fraud and Promissory Estoppel (Counts I and IV)

Plaintiff further alleges that defendant made "false statements and misrepresentations" "concerning the success of the business, concerning his desire to run the business, his intention to repay loans to the company and his intention to honor obligations to pay others." Compl. ¶ 67. He claims to have relied on these statements to his detriment, and pleads damages "in excess of $200,000." Id. ¶¶ 68-69.

"In order to state a claim for fraudulent misrepresentation, the plaintiff must allege: (1) that the statement was knowingly false; (2) that [defendant] made the false statement with the intent to deceive; (3) that the statement was material to [plaintiff's] decision ...; (4) that [plaintiff] reasonably relied on the statement; and (5) that [plaintiff was] injured as a result of [his] reliance." Doyle, 103 F.3d at 193.

Here, plaintiff fails plausibly to allege several of these elements. The only statement whose content is specifically alleged is defendant's representation that "business was slow but [] getting better." Id. ¶ 34. The complaint otherwise alludes only to defendant's general representations that "he had desire, knowledge, expertise, and that he would provide investment returns for the contributions made by Venditto," id. ¶ 71; that he would "use best efforts to build and run a successful business," id. ¶ 77; that "he was working diligently and in the best interests of the business in trying to grow the seemingly struggling business," id. ¶ 81; and that plaintiff's investments "would be used to make sound and professional business decisions in the running of Sadhana." Id.

Even assuming that the above allegations meet the particularity requirements of Federal Rule of Civil Procedure 9(b), there is no allegation that any of the statements were knowingly false or made with intent to deceive, nor is reasonable reliance plausibly alleged.  Plaintiff's own role included "corporate record keeping, partnership level accounting and legal matters of the business," id. ¶ 30.  His background involved "owning, managing and developing commercial and residential real estate," while defendant's consisted of "acting as a yoga instructor and teaching yoga classes."  Id. ¶ 34.  This disparity in business acumen, paired with the "questions" plaintiff alleges he occasionally had "about Cunningham's financial accounting," id. ¶ 34, and the ample opportunity for inquiry his corporate role afforded, contradict the assertion of reasonable reliance.  Because that element is defined similarly for claims of fraud and promissory estoppel, plaintiff's claim of promissory estoppel fails on the same grounds.  See Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1125 & n.6 (1st Cir. 1995) ("An element of promissory estoppel is that the party invoking it must have reasonably relied on the alleged promise to his detriment." (citation omitted)).  Accordingly, the motion to dismiss is allowed as to Counts I and IV.

    **D.**    **Breach of Fiduciary Duty, Conversion, Unjust Enrichment, and for an Accounting (Counts II, V, VI, and VII)**

In Counts II, V, and VI, plaintiff advances alternative causes of action concerning defendant's improper retention of funds, alleging that he (1) "breached the fiduciary duty they (sic) owed to plaintiff by failing and refusing to return the money entrusted to him and, upon information and belief, converting that money to his own use," Compl. ¶ 73; (2) "improperly exercised control over and converted for his own use the funds that Venditto entrusted to, or allowed him control over, for specific purposes,"  Compl. ¶ 85;

and (3) has been unjustly enriched "by the amounts that Venditto and others provided to them (sic) which Cunningham has refused and failed to return." Compl. ¶ 88. He also seeks an accounting (Count VII) "identifying how and where the funds loaned to the business were used or spent." Compl. ¶ 92.

Under Massachusetts law, however, "a member of an LLC cannot bring an action in his own name to enforce the rights or redress the injuries of the LLC." Laverty v. Massad, 661 F. Supp. 2d 55, 62 (D. Mass. 2009); cf. Butler v. Winner Int'l Corp., 1995 WL 420004, *4, *11–12 (4th Cir. July 17, 1995) (plaintiff had standing where his claim was not based on his status as a shareholder, but rather on the fact that the defendant had made certain promises to him in order to induce him to personally guarantee the corporation's loans). See Taylor v. Moskow, No.13-12675-FDS, 2014 WL 2573990, at *4 (D. Mass. June 6, 2014) ("the proper entities to complain [of fiduciary breach and unjust enrichment] are the LLCs that directly suffered harm, not its member-owners"), aff'd in part, appeal dismissed in part, 600 F. App'x 2 (1st Cir. 2015).

Plaintiff's contributions were clearly made to the company. See, e.g., Compl. ¶ 92 (demanding an accounting for defendant's use of "the funds loaned to the business," (emphasis added)); Docket # 11-3, at 3 (Buy-out agreement identifying plaintiff's $212,500 contribution as among the "capital investments deposited into the Sadhana, LLC account"). Because Sadhana, LLC, not plaintiff, is thus the properly aggrieved party in any action for the misappropriation of those funds, the motion to dismiss is allowed as to Counts II, V, VI, and VII.

### E. Constructive Trust (Count VIII)

Though styled as a cause of action, plaintiff's final count seeks a particular remedy. See Stevens v. Thacker, 550 F. Supp. 2d 161, 165 (D. Mass. 2008) ("A constructive trust is, of course, a remedy rather than a cause of action"). Because his underlying claims fail, the relief requested in Count VIII is unavailable.

### IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss (Docket # 9) is allowed in its entirety. Judgment may be entered dismissing the complaint.

    July 27, 2018                                         /s/Rya W. Zobel

        DATE                                              RYA W. ZOBEL
                                                            SENIOR UNITED STATES DISTRICT JUDGE